**No. 24-1643**

---

# United States Court of Appeals
**FOR THE FOURTH CIRCUIT**

---

**BING CHEN & JIE CHEN,**
Plaintiffs – Appellants,

**v.**

**COMMODORE MANAGEMENT COMPANY, INC. & WOODMONT PARK, INC.,**
Defendants – Appellees.

---

**Appeal from the United States District Court for the District of Maryland**

---

## OPENING BRIEF OF PLAINTIFFS-APPELLANTS BING CHEN & JIE CHEN


Erica Hashimoto
*Director*

Max Alderman
*Supervising Attorney*

Ryan Menter
Chloe Miracle-Rutledge
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

*Counsel for Plaintiffs-Appellants*


January 30, 2026

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES .........................................................2

STATEMENT OF THE CASE..............................................................4

I. STATEMENT OF FACTS ............................................................ 4

A. Defendants' Discriminatory Actions with Respect to Apartment 1819 ......................................................... 4

B. Woodmont Park Repeatedly Sues the Chens.................. 7

C. Defendants' Eviction Threats Force the Chens to Move. .....................................................................11

II. PROCEDURAL HISTORY .............................................................12

SUMMARY OF THE ARGUMENT.......................................................16

STANDARD OF REVIEW ...................................................................19

ARGUMENT.........................................................................................21

I. THE MAGISTRATE JUDGE ERRED BY DISMISSING THE CHENS' PLAUSIBLY ALLEGED CLAIMS. ........................................21

A. The Chens Plausibly Alleged Familial Status Discrimination...............................................................22

B. The Chens Plausibly Alleged Discrimination Because of Their Race. ...................................................25

II. THE MAGISTRATE JUDGE IMPROPERLY DISMISSED THE AMENDED COMPLAINT WITH PREJUDICE......................................27

III. THE MAGISTRATE JUDGE ERRED BY DENYING APPOINTED COUNSEL. ..........................................................................30

A. The IFP Statute's Filing Fee and Indigence Requirements Do Not Apply to FHA Requests for Appointed Counsel. .......... 31

B. The Chens Were Entitled to Appointment of Counsel. .......... 36

1. The Chens Cannot Litigate this Case on Their Own .......... 38

2. The Chens' Claims are Colorable. .......... 42

3. The Chens Were Unable to Obtain or Afford an Attorney. .......... 44

CONCLUSION .......... 46

STATEMENT REGARDING ORAL ARGUMENT .......... 48

CERTIFICATE OF COMPLIANCE .......... 49

CERTIFICATE OF SERVICE .......... 50

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. E.I. DuPont de Nemours & Co.*,
335 U.S. 331 (1948) ........................................................................32

*Arnett v. Webster*,
658 F.3d 742 (7th Cir. 2011)...........................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................19

*Barnett v. Inova Health Care Servs.*,
125 F.4th 465 (4th Cir. 2025) .....................................................21, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................19, 43

*Bloch v. Frischholz*,
587 F.3d 771 (7th Cir. 2009)...........................................................25

*Boykin v. KeyCorp*,
521 F.3d 202 (2d Cir. 2008) ............................................................21

*Bradshaw v. Zoological Soc'y*,
662 F.2d 1301 (9th Cir. 1981).....................................................42, 45

*Brown v. Lackey*,
463 F. App'x 228 (4th Cir. 2012) .....................................................32

*Carter v. Ball*,
33 F.3d 450 (4th Cir. 1994) .............................................................26

*Castillo v. Cook Cnty. Mail Room Dep't*,
990 F.2d 304 (7th Cir. 1993)...........................................................38

*Castner v. Colo. Springs Cablevision*,
979 F.2d 1417 (10th Cir. 1992)....................................... 36, 37, 43, 44

*Caston v. Sears, Roebuck & Co.*,
556 F.2d 1305 (5th Cir. 1977)....................................................44

*Coleman v. Peyton*,
340 F.2d 603 (4th Cir. 1965)....................................................27

*Davis v. Williams*,
588 F.2d 69 (4th Cir. 1978) ....................................................27

*Erickson v. Pardus*,
551 U.S. 89 (2007) ....................................................26

*Estelle v. Gamble*,
429 U.S. 97 (1976) ....................................................26

*Gil v. Reed*,
381 F.3d 649 (7th Cir. 2004)....................................................38

*Gonzalez v. Carlin*,
907 F.2d 573 (5th Cir. 1990)................................ 20, 33, 34, 36, 37, 44

*Gordon v. Leeke*,
574 F.2d 1147 (4th Cir. 1978)....................................................37

*Hall v. Greystar Mgmt. Servs. L.P.*,
637 F. App'x 93 (4th Cir. 2016) ....................................................40

*Hilliard v. Volcker*,
659 F.2d 1125 (D.C. Cir. 1981)....................................................35

*Hunt v. Aimco Props., L.P.*,
814 F.3d 1213 (11th Cir. 2016)....................................................24

*Hunter v. Dep't of Air Force Agency*,
846 F.2d 1314 (11th Cir. 1988)....................................................37

*Ivey v. Bd. of Regents*,
673 F.2d 266 (9th Cir. 1982)....................................................36, 44

*James v. Eli*,
889 F.3d 320 (7th Cir. 2018)....................................................40

*Jenkins v. Chem. Bank*,
721 F.2d 876 (2d Cir. 1983) .......................................................... 34, 45

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) .......................................................... 27, 28

*King v. Rumsfeld*,
328 F.3d 145 (4th Cir. 2003) .......................................................... 40

*Luna v. Int'l Ass'n of Machinists & Aerospace Workers Loc. No. 36*,
614 F.2d 529 (5th Cir. 1980) .......................................................... 38, 39

*McCleary-Evans v. Md. Dep't of Transp.*,
780 F.3d 582 (4th Cir. 2015) .......................................................... 24

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) .......................................................... 21

*Neitzke v. Williams*,
490 U.S. 319 (1989) .......................................................... 32, 42

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250 (4th Cir. 2009) .......................................................... 19

*Nielsen v. Preap*,
586 U.S. 392 (2019) .......................................................... 31

*Parham v. Johnson*,
126 F.3d 454 (3d Cir. 1997) .......................................................... 41

*Poindexter v. F.B.I.*,
737 F.2d 1173 (D.C. Cir. 1984) .................. 20, 34, 35, 36, 41, 42, 43, 44

*Pruitt v. Mote*,
503 F.3d 647 (7th Cir. 2007) .......................................................... 40, 41

*Reizakis v. Loy*,
490 F.2d 1132 (4th Cir. 1974) .......................................................... 27

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
903 F.3d 415 (4th Cir. 2018) .......................................................... 19, 21, 39

*Rosen v. Thornburgh*,
928 F.2d 528 (2d Cir. 1991) .......................................................... 40

*Samuel v. Del. Cnty. Hous. Auth.*,
No. 23-3272, 2024 WL 4003088 (3rd Cir. 2024) .................... 34, 36, 37

*Scott v. Health Net Fed. Servs., LLC*,
463 F. App'x 206 (4th Cir. 2012) ............................................... 19, 37

*Strothers v. City of Laurel*,
895 F.3d 317 (4th Cir. 2018) ...................................................... 24, 29

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ....................................................................... 21

*Thompson v. North Am. Stainless, LP*,
562 U.S. 170 (2011) ....................................................................... 34

*Tull v. New York City Housing Authority*,
722 F. App'x 75 (2d Cir. 2018) ...................................................... 23

*United States v. Brown*,
78 F.4th 122 (4th Cir. 2023) .......................................................... 24

*United States v. Worley*,
685 F.3d 404 (4th Cir. 2012) .......................................................... 24

*Whisenant v. Yuam*,
739 F.2d 160 (4th Cir. 1984) ............................... 19, 20, 37, 39, 41, 42

*Williams v. Cerberonics, Inc.*,
871 F.2d 452 (4th Cir. 1989) .......................................................... 29

*Woodmont Park Apartment v. Chen*,
No. D-061-LT-22-020880 (Md. Dist. Ct. Montgomery Cnty.
Feb. 3, 2023) ..................................................................................... 9

*Woodmont Park Apartment v. Chen*,
No. D-061-LT-22-026394 (Md. Dist. Ct. Montgomery Cnty.
Mar. 8, 2023) ..................................................................................... 9

*Woodmont Park Apartment v. Chen*,
No. D-061-LT-23-003312 (Md. Dist. Ct. Montgomery Cnty. Feb. 3, 2023) .......... 9

*Woods v. City of Greensboro*,
855 F.3d 639 (4th Cir. 2017) .......... 22

**Statutes**

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1915 .......... 14

28 U.S.C. §§ 1915(a) .......... 32

28 U.S.C. § 1915(e)(1) .......... 44

42 U.S.C. § 2000e-5(f)(1) .......... 33, 34

42 U.S.C. § 3601 .......... 1

42 U.S.C. § 3602(k)(1) .......... 23

42 U.S.C. § 3604(a) .......... 22, 23, 25

42 U.S.C. § 3604(b) .......... 25

42 U.S.C. § 3613(b) .......... 31

42 U.S.C. § 3613(b)(1) .......... 13, 33

42 U.S.C. § 3613(c)(1) .......... 41

42 U.S.C. § 3617 .......... 29

Pub. L. 88-352, Title VII, § 706 (1964) .......... 35

Pub. L. 90-284, Title VIII, § 813 (1968) .......... 35

Md. Code Ann. Real Prop. § 8-407 .......... 8

**Other Authorities**


Fed. R. App. P. 4(1)(A) .......................................................................1

Fed. R. Civ. P. 12(b)(6).............................................................19, 42

24 C.F.R. § 100.20.......................................................................23

24 C.F.R. § 100.65(b)(1) ..............................................................25

24 C.F.R. § 100.65(b)(2) ..............................................................25

Andrew Truong, *Linguistic Legal Deserts: Addressing Language Access in the United States Legal System for Limited English Proficient Asian Americans and Pacific Islanders*, 102 Boston U. L. Rev. 1441 (2022) ..................................41

Lisa T. Alexander, *Evicted: The Socio-Legal Case for the Right to Housing*, 126 Yale L.J. 431 (2017) ......................................40

*Representing Yourself in Federal District Court: A Handbook for Pro Se Litigants* 184 (2019), available at: https://perma.cc/UF89-R3A5 .......................................................32, 33

Robert Belton, *A Comparative Review of Public and Private Enforcement of Title VII of the Civil Rights Act of 1964*, 31 Vand. L. Rev. 905, 906–08 (1978).......................................................35

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction because Plaintiffs-Appellants Bing and Jie Chen sought relief under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq.*, otherwise known as the "Fair Housing Act." 28 U.S.C. § 1331. A magistrate judge dismissed the Chens' amended complaint with prejudice and denied their request for appointment of counsel on June 10, 2024. *See* JA210. The Chens timely filed their notice of appeal on July 10, 2024. Fed. R. App. P. 4(1)(A). This Court has appellate jurisdiction because the Chens appeal from a final order dismissing their case. 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I. Whether dismissal of the Chens' Fair Housing Act complaint was improper because:

   A. The magistrate judge did not consider their familial status discrimination claim that defendants denied the Chens' apartment transfer application after staff saw their children's artwork in their apartment; and

   B. The Chens sufficiently alleged that defendants racially discriminated against them by failing to make timely repairs or respond to habitability issues because the Chens are Chinese.

II. Whether the magistrate judge abused his discretion in dismissing these claims with prejudice because he neither gave the Chens an opportunity to amend their claims nor found that amendment would be futile.

III. Whether the magistrate judge erroneously refused to appoint counsel by:

   A. Applying the *in forma pauperis* statute's indigency requirements to the Chens' request for counsel under the Fair Housing Act and faulting them for paying their filing fees; and

B. Failing to adequately consider the Chens' limited English skills and inability to litigate their complex claims without an attorney under this Court's established appointment-of-counsel tests.

## STATEMENT OF THE CASE

### I. Statement of Facts

#### A. Defendants' Discriminatory Actions with Respect to Apartment 1819

Plaintiffs-Appellants Bing and Jie Chen immigrated to the United States from China in May 2014. JA119, 121. They "do not speak English fluently" and rely on translation services. JA125, 133. They have two sons, the younger of whom was born in 2015. JA119. The Chens rented Apartment 1819 at Woodmont Park Apartments in Rockville, Maryland from October 2014 until April 2023. JA119. Defendant-Appellee Commodore Management Company, Inc. was the Chens' landlord and Defendant-Appellee Woodmont Park, Inc. was the apartment building's property manager (collectively, "Defendants").[1] JA119.

The Chens were mistreated as soon as they signed the lease for Apartment 1819. Upon signing, Commodore did not provide the Chens a copy of the landlord-tenant handbook, which outlined their rights and

[1] When the amended complaint refers or appears to refer to both defendants, this brief uses the term "Defendants." When the complaint is specific as to one defendant, the brief names the defendant. If and when this case proceeds to discovery, the Chens will have sufficient information to consistently distinguish between Commodore and Woodmont Park.

Defendants' responsibilities. JA121–122. Additionally, Commodore required the Chens to pay their rent via money order for part of their tenancy, refusing to accept their payment by a conventional check. JA122.

Apartment 1819 quickly fell into a state of disrepair. In 2016, an aging metal water pipe caused the Chens' bathroom vanity to leak and rust. JA122. Over the next few years, Apartment 1819 suffered further damage. JA122. By 2021, it was "broken in many places." JA123. The doors to the bathroom and the children's bedroom did not close properly, depriving the Chens and their guests of privacy when using the restroom or changing clothes. JA123. Other damage included a broken window, three broken shutters, a closet cabinet that would not close, and cracks in the floor and walls of both the kitchen and bathroom. JA122–123. The Chens also started finding roaches throughout the apartment, including on their desk, dining room table, bookshelf, and even in their beds. JA123. Jie Chen also found mice in the apartment. JA123. These infestations made Apartment 1819 "unsuitable for living" and "hell on earth." JA123–124.

The Chens repeatedly asked Defendants to repair the broken items and assist with the infestation. JA122–123. They were met with meager fixes, long delays, and silence. JA122–123. Defendants eventually fixed the Chens' persistent vanity leak (after the Chens raised the issue multiple times), but they billed the Chens $225.00 for the repair. JA122. Montgomery County's Department of Housing and Community Affairs advised the Chens that Defendants' charge was unlawful. JA122. Defendants also waited more than a year after the Chens reported the damage to fix the broken doors and windows. JA123–124. While Defendants' staff occasionally visited the apartment to inspect the remaining reported damage, they failed to make or schedule other repairs. JA122–123. And Defendants' failure to provide the Chens any specific remedy for their acute pest infestation for over two years forced the Chens to buy countless devices and sprays to keep their apartment habitable. JA123. Defendants instead waited until 2023 to provide uniform insect prevention measures to the whole building. JA127. They then fined the Chens $50.00 because they ostensibly were "not prepared" for the service—a fine no other tenant received. JA127.

Given the squalid state of Apartment 1819, the Chens repeatedly requested a transfer to a different apartment in the same building. JA123–124. Defendants eventually "agreed" to the transfer and asked the Chens to tour Apartment 1303 to confirm its suitability. JA123. After touring that apartment, the Chens submitted an application form and a $15 check to cover the transfer application fee. JA123. The transfer was in its final stages when Defendants' staff came to visit Apartment 1819. JA123. Upon entering, the staff discovered and "pointed out" that the Chens' children had "posted" some of their artwork on the walls. JA123. After that visit, Defendants emailed the Chens, "canceling [their] transfer application" and instructing them to pick up their $15 check from the office. JA123–124.

The Chens stopped paying rent between March and July 2022 to protest their living conditions and Defendants' lack of response. JA124. Once the main problems were repaired, the Chens paid rent in full and on time from August 2022 to April 2023. JA124.

### B. Woodmont Park Repeatedly Sues the Chens.

Woodmont Park responded to the Chens' refusal to pay rent by suing them five separate times in state court. JA124–127. The first suit

was in July 2022, when Woodmont Park sought five months of rent from March to July 2022. JA124. Woodmont Park later changed the claim to seek only two months of rent, conceding that the Chens had already paid three months. JA124. Bing Chen argued that they had a legal right to refuse to pay rent because the apartment was uninhabitable, explained that aspects of Woodmont Park's lawsuit was frivolous, and sought to file both counterclaims and a motion for sanctions, but the state court ruled in Woodmont Park's favor. JA124.

In the second suit filed in late September 2022, Woodmont Park sought rent from August to October 2022, despite the Chens having paid rent for those months on time. JA124–125. The court scheduled a hearing in this case for December 28, 2022, but notice of the hearing was not posted on the Chens' door until five days before the court date. JA125. This left the Chens with no time to file counterclaims or defenses, apply for language translation services, or take time off from work to appear in court. JA125. During this lawsuit, Woodmont Park requested a warrant of restitution,[2] which the state court granted, and which the

[2] In Maryland state court, landlords can request a "warrant of restitution" if a court orders a tenant to leave the property but the tenant

Chens referred to as an "eviction order" in their amended complaint. JA125–126; Warrant of Restitution Order, *Woodmont Park Apartment v. Chen*, No. D-061-LT-22-020880 (Md. Dist. Ct. Montgomery Cnty. Feb. 3, 2023). Neither Woodmont Park nor the state court gave the Chens notice of this order or served it on them. JA125–126.

In a third suit filed in December 2022, Woodmont Park sued for rent from November and December 2022. JA125. The Chens countered that they had again timely paid rent during this period. JA124. This case was dismissed. *See* Landlord Tenant Dismissal, *Woodmont Park Apartment v. Chen*, No. D-061-LT-22-026394 (Md. Dist. Ct. Montgomery Cnty. Mar. 8, 2023).

In February 2023,[3] Woodmont Park sued a fourth time for rent from January and February 2023. JA126. When the Chens went to court, however, they discovered that Woodmont Park had withdrawn the

refuses to do so. The warrant of restitution orders the sheriff to allow the landlord to repossess the property. *See* Md. Code Ann. Real Prop. § 8-407.

[3] The Chens state that this lawsuit began in March 2023, JA126, but the District Court for Montgomery County's records show that this case, D-061-LT-23-003312, was filed on February 3, 2023, Complaint / Petition – Landlord Tenant, *Woodmont Park Apartment v. Chen*, No. D-061-LT-23-003312 (Md. Dist. Ct. Montgomery Cnty. Feb. 3, 2023).

lawsuit. JA126. The Chens consulted with a legal aid lawyer about this most recent lawsuit and were "very shocked and very scared" to learn that an "eviction order" (the warrant of restitution from the September lawsuit) had been issued against them. JA125–126. The potential eviction panicked the Chens, and they worried about their sons, who were "facing homelessness" and "couldn't go to school." JA125. In response, the Chens filed copies of rent payment checks from August through October 2022 with the court. JA126.

In late March 2023, Defendants served the Chens with a "Notice to Quit and Vacate," alerting them that they could be subject to eviction if they did not vacate Apartment 1819 by May 31, 2023. JA126. The Chens "scramble[d] to find other housing" and feared being "kicked out on the street." JA126. But when they went to court, the judge stated that Defendants had no right to evict the Chens without his order. JA126.

Woodmont Park sued the Chens for a fifth and final time in May 2023 for rent from March and April 2023. JA127. When the Chens went to court, the judge notified them that the case had been withdrawn. JA127.

All told, Woodmont Park sought $27,296.50 in damages, despite the Chens initially refusing to pay only $8,250.00 in rent. JA127. Woodmont Park's serial lawsuits—some of which it quickly dropped without notice to the Chens—caused the Chens deep "emotional distress" and "disturbed" their family, especially their children. JA131–132. And because the Chens' litigation record was public, these lawsuits impacted the Chens' social reputation, credit reports, and future housing opportunities. JA132.

### C. Defendants' Eviction Threats Force the Chens to Move.

Because of the multiple threatened evictions and notice to vacate, the Chens moved out of Apartment 1819 at the end of April 2023. JA126–127. After moving, it took the Chens "nearly two hours" to drive to one of their sons' new schools every day, greatly increasing their transportation costs. JA126–127. The "several years" of "injustice" experienced by the Chens "caused very serious harm to [their] family." JA121. This included "stress and trauma," "economic losses," and many emotional and psychological burdens that impeded the Chens' ability to "[l]ive, work and study." JA131–132. The experience had particularly "long-lasting emotional and physiological effects" on their two sons, who

struggled to adjust to their new schools and cope with the housing disruption. JA126–127, 131–132.

## II. PROCEDURAL HISTORY

The Chens sued pro se in the United States District Court for the District of Maryland under Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq.*, otherwise known as the "Fair Housing Act" ("FHA"). Recognizing that it is a "policy of the United States" to provide "for fair housing" by prohibiting discrimination based on familial status or race, *id.* §§ 3601, 3604; JA013, the Chens sought damages for Defendants' harassing conduct, JA001, 024. The Chens highlighted the "deeply rooted" history of racial discrimination in the United States, particularly against Chinese people, and the promises of equality and anti-discrimination contained in the FHA. JA012–013. They alleged that Defendants delayed certain repairs and failed to make others, and they failed to address the insect and rodent infestation because of racial discrimination. JA014–016. The Chens further alleged that Defendants refused their transfer to Apartment 1303 after they toured and paid the fee because of familial status discrimination. JA014. They also alleged that Defendants' failures constituted retaliation because the Chens had

"complained to Housing and Community Affairs" about Defendants' discriminatory conduct. JA005, 014. In their view, Defendants' behavior was so egregious and harmful as to constitute a "criminal offense[]." JA016. Finally, the Chens requested appointment of counsel under the FHA. 42 U.S.C. § 3613(b)(1); JA017.

The parties consented to have the case adjudicated by a magistrate judge. In response to the Chens' original complaint, Defendants moved to dismiss for insufficient service of process. JA052, 084. The magistrate judge interpreted Defendants' motion to dismiss as a motion to quash service, ordered the Chens to properly serve Defendants, and denied the Chens' request for appointed counsel. JA113.

The Chens filed and served an amended complaint on November 9, 2023, alleging the same violations and renewing their request for counsel under the FHA. JA119. The Chens sought counsel because they did "not speak English fluently" and did not "have a comprehensive understanding of U.S. law." JA132–133. They could not obtain private counsel on their own because they "could not bear the significant attorney's fees." JA132–133.

Defendants moved to dismiss the amended complaint, arguing that the Chens had failed to allege that Defendants' actions were because of the Chens' protected status and urging the court to dismiss with prejudice. JA141. Defendants did not oppose the Chens' request for counsel. *See generally* JA141, 176. In their opposition to dismissal, the Chens put forward additional facts and sought leave to amend the complaint. JA167.

The magistrate judge—after considering the Chens' amended complaint on the merits for the first time—granted Defendants' motion and dismissed their claims with prejudice. JA210. The magistrate judge accepted as true that the Chens were part of a protected class on the basis of race and that adverse actions had been taken against them. JA218. But he agreed with Defendants: The Chens had not alleged that Defendants' actions were "because of" the Chens' race. JA219.

The magistrate judge also declined to appoint counsel to represent the Chens. JA211. The magistrate judge did not address the FHA's appointment-of-counsel provision. JA211. Instead, he concluded that the Chens' payment of filing fees precluded them from being appointed counsel under the *in forma pauperis* ("IFP") statute, 28 U.S.C. § 1915,

and no exceptional circumstances warranted the appointment of counsel. JA211.

The Chens appealed the dismissal of their amended complaint and the denial of counsel. On November 18, 2025, this Court appointed undersigned counsel to represent the Chens. It asked counsel to address whether the magistrate judge properly denied the plaintiffs' motion for appointment of counsel under the FHA, as well as any other arguments counsel deemed meritorious.

## SUMMARY OF THE ARGUMENT

After being treated differently than tenants of other races, living in a damaged and vermin-infested apartment, and being denied a transfer to a habitable apartment, the Chens sought relief under the FHA. The magistrate judge denied their claims for relief and their request for an appointed attorney. Each denial constitutes error.

The magistrate judge entirely ignored the Chens' plausibly alleged familial status discrimination claim. The Chens alleged that their minor children lived with them and that Defendants denied their apartment transfer request only after staff observed and commented on the children's artwork. This error alone merits reversal.

The Chens' racial discrimination claim was also plausible. The Chens alleged that Defendants took advantage of them as new immigrants to the United States from China. Numerous fixtures in their home were left unrepaired, and the scarce repairs that did occur took months. They further alleged that Defendants failed to provide specific services to control a cockroach and mouse infestation for over two years. When Defendants finally sprayed the entire building, they fined the Chens, and no other tenants, for being unprepared for the service.

Imposing a fee on the Chens that was not imposed on tenants of other races sufficiently demonstrates that these adverse actions were because the Chens are Chinese.

Even if those FHA claims were not plausibly alleged, the magistrate judge abused his discretion by dismissing them with prejudice instead of giving the Chens an opportunity to substantively amend their complaint. There was no risk that amendment would be futile because the Chens alleged no facts rendering their claims implausible. Indeed, amendment of these claims, alongside their unlawful retaliation claim, would be anything but futile. The Chens sought to present new facts to support their theory that Defendants discriminated against them and other Chinese residents because of their race. Preventing them from doing so merits reversal.

The failure to appoint counsel for the Chens also constitutes reversible error. The magistrate judge applied the IFP statute's filing fee waiver requirements to hold that the Chens' payment of filing fees precluded appointment of counsel. This was error because the FHA's appointment-of-counsel provision hinges neither on filing fee payment nor IFP indigency.

Setting aside the payment of filing fees, the Chens deserved counsel. This is true under the appointment-of-counsel tests of Title VII and the IFP statute, both of which are frequently applied to requests for counsel brought under the FHA. The Chens cannot successfully litigate without counsel because they do not speak English and cannot manage this complex case alone. They also cannot bear the cost of an attorney. And their FHA claims are sufficiently colorable to warrant appointment of counsel.

## STANDARD OF REVIEW

This Court reviews a district court's ruling on a motion to dismiss de novo. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is improper when the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires only that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This Court "must assume all well-pled facts to be true," and "draw all reasonable inferences in favor of the plaintiff." *Reyes*, 903 F.3d at 423 (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

This Court reviews motions to appoint counsel for abuse of discretion. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 209 (4th Cir. 2012). The district court abuses its discretion when it applies the wrong legal standard or the wrong requirements to appointment-of-counsel motions.

*See Gonzalez v. Carlin,* 907 F.2d 573, 580–81 (5th Cir. 1990). A district court also abuses its discretion by denying counsel to a plaintiff who is unable to litigate pro se or obtain counsel for a case with some merit. *See Whisenant*, 739 F.2d at 163; *Poindexter v. F.B.I.*, 737 F.2d 1173, 1186–89 (D.C. Cir. 1984).

## ARGUMENT

### I. THE MAGISTRATE JUDGE ERRED BY DISMISSING THE CHENS' PLAUSIBLY ALLEGED CLAIMS.

The Chens plausibly alleged that Defendants discriminated against them in violation of the FHA. The Chens need not put forward specific facts or evidence proving a prima facie case of housing discrimination to state a plausible FHA claim. *See Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008). *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)'s burden-shifting paradigm is an evidentiary burden,[4] not to be enforced at the pleading stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). This "holding applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers[,]" including FHA claims. *Boykin*, 521 F.3d at 213 (collecting cases); *see also Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469–70 (4th Cir. 2025). The Chens therefore need only plead plausible facts that create a "reasonable inference" of

[4] The *McDonnell Douglas* framework governs FHA discrimination claims. *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421 (4th Cir. 2018) (citing 411 U.S. at 802–04). It starts with a plaintiff putting forward evidence of a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802–04. A defendant can then offer a legitimate nondiscriminatory reason for the adverse action. *Id.* If the defendant does so, the plaintiff is afforded an opportunity to show that the proffered reason is a pretext for discrimination. *Id.*

discrimination. *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quotations omitted). They have done so by pleading discrimination based on: (1) familial status and (2) race.

### A. The Chens Plausibly Alleged Familial Status Discrimination.

Defendants violated the FHA by "mak[ing] unavailable or den[ying] a dwelling to any person because of . . . familial status." 42 U.S.C. § 3604(a). The Chens plausibly alleged that Defendants denied their transfer to another apartment because they had children under the age of eighteen. The magistrate judge erred not only in dismissing this claim but also in failing to consider it at all. *See generally* JA210. This Court should hold that this claim was plausibly alleged and reverse.

The Chens explicitly raised their familial status theory in both their amended complaint and in their opposition briefing. JA130 ("[D]efendants 'cancelling [their] transfer application' is discrimination for familial status."); JA171 ("[T]he cancellation of [their] transfer following the inspection of children's drawings[ is] direct evidence of discrimination . . . against [their] family.").

Had the magistrate judge considered this claim, he would have agreed that Defendants plausibly violated the FHA when they "den[ied]"

the Chens' transfer application for new housing because of their "familial status." 42 U.S.C. § 3604(a). The Chens met the statutory definition of family because they have at least one child under the age of eighteen who resides with them. JA119; *see also* 42 U.S.C. § 3602(k)(1); 24 C.F.R. 100.20. The Chens likewise plausibly alleged that adverse action was taken against them. *See* 42 U.S.C. § 3604(a); *see also Tull v. New York City Housing Authority*, 722 F. App'x 75, 78 (2d Cir. 2018) (refusing to allow a tenant to transfer to another apartment in the same building is actionable discrimination under the FHA). Apartment 1303 was available for rent, and the Chens took every necessary step to move into it: They paid the application fee, submitted the transfer application form, and toured the unit. JA123. Yet when the transfer was all but completed, Defendants emailed the Chens to "cancel[ their] transfer application" without explaining why. JA123–124.

Defendants denied this transfer because of the Chens' familial status. The Chens alleged that the unexplained cancellation occurred immediately after Defendants came to visit Apartment 1819 and specifically pointed out that the Chens' two children had posted hand-drawn pictures on the wall. JA123 ("[D]efendant's staff checked our room

in 1819 and pointed out [the artwork]."); JA130 ("Defendants retaliate against our administrative complaints and prepare to counterclaim, because of the kids."). Because the Chens "need only plead facts supporting a reasonable inference of discriminatory intent," the timing of the transfer cancellation after Defendants expressly pointed out the children's drawings was sufficient. *Barnett*, 125 F.4th at 471 (citing *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015)); *see also Strothers v. City of Laurel*, 895 F.3d 317, 337 (4th Cir. 2018) (noting that a short window of time between a protected act and adverse action is "causally significant"); *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1222–23 (11th Cir. 2016) (the assertion that an apartment building does not want a disabled man living there is enough to show causation under the FHA).

Because the magistrate judge erred in failing to address the ground for relief that was expressly before it, this Court should "exercise [its] discretion to correct the error" and reverse and remand with instructions to deny Defendants' motion to dismiss as to this claim. *United States v. Brown*, 78 F.4th 122, 131 (4th Cir. 2023) (quoting *United States v. Worley*, 685 F.3d 404, 408–09 (4th Cir. 2012)). At the very least, this Court should

reverse and remand for the magistrate judge to consider the claim in the first instance.

### B. The Chens Plausibly Alleged Discrimination Because of Their Race.

The Chens have also plausibly alleged that defendants imposed different "terms, conditions, or privileges of sale or rental of a dwelling" because of race. 42 U.S.C. § 3604(b). Defendants did not contest below that the Chens had alleged membership in a protected class and that Defendants took adverse action against them, satisfying the first two elements of an FHA racial discrimination claim. *See generally* JA143. The Chens alleged that they are Chinese. JA121. Defendants also failed to make timely repairs or provide pest control, imposed an unlawful fee after fixing a vanity, and instituted a fine for lack of preparedness exclusively against the Chens. JA122–123, 127; *see* 24 C.F.R. § 100.65(b)(2); 24 C.F.R. § 100.65(b)(1). These allegations demonstrate both that the Chens' status is protected, and that Defendants took legally prohibited, adverse actions. *See id.*; *see also Bloch v. Frischholz*, 587 F.3d 771, 780–82 (7th Cir. 2009) (en banc).

This leaves only the question of whether the Chens alleged that these different rental conditions were "because of" their race. 42 U.S.C.

§3604(a). The Chens' allegations, liberally construed based on their pro se status, did so. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Throughout their tenancy, the Chens—who were "new immigrants from China" and "not fluent in English," JA129—were singled out for adverse treatment without any nondiscriminatory rationale. The Chens were the only individuals fined for a purported lack of pest control preparation. JA127. They were also forced to pay their rent via money order instead of the customary method of paying by check. JA122. Woodmont Park singled out the Chens through numerous state court lawsuits, often seeking rental payments the Chens had already made. JA124–127. Many of those suits had no merit and were either dismissed by the court or withdrawn by Woodmont Park itself. *See, e.g.*, JA126–127. Finally, Defendants levied an unlawful fee against the Chens for the repair of a vanity. JA122. Because treating an individual of a different race more favorably than the plaintiff is enough to create a reasonable inference of discrimination, *see, e.g.*, *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994), the Chens have satisfied the causation element of their FHA racial discrimination claim.

## II. THE MAGISTRATE JUDGE IMPROPERLY DISMISSED THE AMENDED COMPLAINT WITH PREJUDICE.

Even if this Court concludes that either or both discrimination claims were not plausibly alleged, the dismissal with prejudice should be reversed. "[D]ismissal with prejudice is a harsh sanction which should not be invoked lightly." *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) (quoting *Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974)). The magistrate judge "neither gave [the Chens] the opportunity to amend nor . . . engag[ed] in any discussion as to why amendment would be futile." *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016). Therefore, "dismissal should [have been] without prejudice," and the magistrate judge's conclusion to the contrary was an abuse of discretion. *Id.*; *see also Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir. 1965) (per curiam) (holding that, if a pro se complaint contains a potentially cognizable claim, the plaintiff should be given an opportunity to particularize his allegations); *Arnett v. Webster*, 658 F.3d 742, 756 (7th Cir. 2011).

To justify dismissal with prejudice, the magistrate judge wrote that the Chens had not sought leave to amend and that it was well settled that parties cannot amend their filings through briefing. JA219. That was wrong for two reasons. First, the Chens did seek leave to amend,

both requesting that relief in the caption of their opposition to dismissal and explaining why that relief was warranted in the body of their brief. *See* JA167 (titled "Objection to Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) and Amend some parts of the Complaint"), JA174. Second, even assuming that they had not sought leave to amend, the magistrate judge's holding ignores this Court's binding precedent. This Court has instructed district courts to dismiss pro se complaints without prejudice unless they have either offered an opportunity for amendment or explained why such amendment would be futile. *King*, 825 F.3d at 225. Nor has this Court required that litigants acting without the benefit of counsel first seek amendment on their own. *Id.* Because the magistrate judge disallowed amendment without any discussion of futility, he abused his discretion in dismissing with prejudice. *See id.*

Indeed, the Chens' attempt to proffer new facts in their opposition brief magnified the magistrate judge's error in refusing to permit them to amend. The Chens attempted to put forward in their opposition additional facts demonstrating that other Chinese tenants had faced similar discrimination while tenants of other races had not. JA170. This

proffer indicates that more relevant facts were available and that amendment would not have been futile.

The Chens' allegation that Defendants retaliated against them after they filed complaints with the local housing authority also highlights the magistrate judge's error. JA129–130. An FHA retaliation claim, 42 U.S.C. § 3617, requires the Chens to allege that they engaged in a protected activity, Defendants took adverse action against them, and a causal connection exists between the two. *See Strothers*, 895 F.3d at 327. As discussed, Defendants certainly took adverse actions against the Chens (including by filing multiple baseless lawsuits) after the Chens filed a housing complaint, which is a quintessential protected activity. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). The magistrate judge dismissed the retaliation claim because the Chens did not allege that Defendants took a continuing course of adverse action after becoming aware of their administrative complaint. JA221–222. Permitting amendment to fix this oversight would have been a simple matter. If this Court concludes that any claim in the complaint was not plausibly alleged, the dismissal should be modified to be without prejudice.

## III. The Magistrate Judge Erred by Denying Appointed Counsel.

This Court has yet to address the FHA's standard for appointment of counsel. The magistrate judge opted to apply the IFP statute to evaluate the Chens' request for counsel and denied their request because the Chens had paid their filing fees—despite the Chens not proceeding IFP. He also determined that "exceptional circumstances" did not exist to merit the appointment of counsel.

Both conclusions were erroneous. First, the Chens did not have to proceed IFP, meet the IFP indigence standard, or refrain from paying their filing fees to merit appointed counsel under the FHA. Second, the Chens' limited English language skills and complicated housing discrimination claims warranted counsel under either of the two provisions typically applied to FHA appointment-of-counsel requests: Title VII's appointment-of-counsel test or the IFP statute's "exceptional circumstances" test. This Court should reverse the magistrate judge's denial of counsel and remand with instructions to appoint counsel for the Chens.

### A. The IFP Statute's Filing Fee and Indigence Requirements Do Not Apply to FHA Requests for Appointed Counsel.

The magistrate judge erred by requiring the Chens to satisfy the IFP statute's indigency requirements when they were not proceeding IFP. The FHA—Title VIII of the Civil Rights Act—permits courts to appoint counsel for individuals bringing housing discrimination claims. 42 U.S.C. § 3613(b). It provides:

> Upon application by a person alleging a discriminatory housing practice or a person against whom such a practice is alleged, the court may--
>
> (1) appoint an attorney for such person; or
>
> (2) authorize the commencement or continuation of a civil action under [the FHA] without the payment of fees, costs, or security, if in the opinion of the court such person is financially unable to bear the costs of such action.

*Id.* By using the conjunction "or," Congress separated (1) "appoint[ing] an attorney" from (2) authorizing a suit "without the payment of fees." *Id.* at § 3613(b)(1)–(2). This demonstrates that appointment of counsel and fee-waiving considerations are distinct inquiries. *See Nielsen v. Preap*, 586 U.S. 392, 407–08 (2019) ("Because '[w]ords are to be given the meaning that proper grammar and usage would assign them, the 'rules of grammar govern' statutory interpretation 'unless they contradict the

legislative intent or purpose.'" (internal citation omitted)). Critically, the fee waiver provision in (b)(2) requires a showing of inability to pay fees, but the appointment-of-counsel provision in (b)(1) does not. The plain language of the FHA thus authorizes courts to appoint counsel to anyone alleging FHA violations—regardless of their ability to pay filing fees.

The IFP statute's appointment-of-counsel provision, by contrast, is predicated on indigency and an inability to pay filing fees. Congress enacted the IFP statute in 1892 "to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342–43 (1948)). The IFP statute authorizes the filing of lawsuits "without prepayment of fees" and then permits courts to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. §§ 1915(a), (e)(1). Paying the "filing fee in full" tends to signify that one "does not seek to proceed under [the IFP statute]." *Brown v. Lackey*, 463 F. App'x 228, 229 n.1 (4th Cir. 2012) (explaining that a litigant did not wish to proceed under the Prisoner Litigation Reform Act, a provision of the IFP statute for incarcerated plaintiffs); *see also Representing Yourself in Federal District Court: A Handbook for Pro Se Litigants* 18, 2224

(2019), available at: https://perma.cc/UF89-R3A5 (explaining that litigants can apply to proceed IFP if they cannot pay the filing fee).

The magistrate judge ignored this textual distinction when he held that the Chens' ability to pay their filing fees precluded them from having counsel appointed under the FHA. JA211. The Chens never tried to proceed IFP and never sought to have their fees waived. Rather, they moved for counsel under the relevant provision for their FHA claims, 42 U.S.C. § 3613(b)(1), which does not hinge on payment of filing fees or indigency. Where "there is no indication in the record that" the plaintiff was proceeding IFP, applying the IFP statute's appointment-of-counsel provision is "in error." *Gonzalez v. Carlin*, 907 F.2d 573, 580 (5th Cir. 1990).

Permitting the magistrate judge's decision to stand would improperly nullify the FHA's specific appointment-of-counsel provision and render it superfluous. Acknowledging this, courts have rightly refused to incorporate the IFP indigence standard into Title VII's appointed-counsel provision. Like the FHA, Title VII also permits courts to "appoint an attorney for" employment-discrimination plaintiffs and "authorize the commencement of the action without payment of fees,

costs, or security." 42 U.S.C. § 2000e-5(f)(1). In *Gonzalez*, the Fifth Circuit reasoned that the IFP statute "is not interchangeable with the standard for analyzing the need for appointed counsel in Title VII cases." 907 F.2d at 580; *see also Poindexter v. F.B.I.*, 737 F.2d 1173, 1182 (D.C. Cir. 1984). The Second Circuit agreed. When "viewed against the background" of the IFP statute's "general authorization" to appoint counsel to indigent civil litigants, Title VII's statute-specific guarantee of the right to apply for appointed counsel "suggests a special congressional concern with legal representation in Title VII cases." *Jenkins v. Chem. Bank*, 721 F.2d 876, 879 (2d Cir. 1983). "Congress could simply have left [Title VII] plaintiffs to rely on the authority created by [the IFP statute]," but it did not. *Poindexter*, 737 F.2d at 1182.

The same should be true for Title VIII's textually indistinguishable and "analogous" appointment-of-counsel provision. *Samuel v. Del. Cnty. Hous. Auth.*, No. 23-3272, 2024 WL 4003088, at *2, n.6 (3rd Cir. 2024); *cf. Thompson v. North Am. Stainless, LP*, 562 U.S. 170, 176 (2011) (holding that Title VII interpretations can be "compatible" with the FHA).

Applying the IFP statute's filing fee and indigence requirements even though Congress specifically provided for appointment of counsel under Title VIII undercuts the historical importance of counsel in this context. Titles VII and VIII give individuals a private right of action to bring their own discrimination claims, which is essential to effectively enforcing these laws. *See* Robert Belton, *A Comparative Review of Public and Private Enforcement of Title VII of the Civil Rights Act of 1964*, 31 Vand. L. Rev. 905, 906–08 (1978). Title VII was a part of the original enactment of the Civil Rights Act in 1964. Pub. L. 88-352, Title VII, § 706 (1964). The FHA—Title VIII of the Civil Rights Act—followed closely behind in 1968. Pub. L. 90-284, Title VIII, § 813 (1968). To "mitigate" the "evident disadvantage" that Title VII plaintiffs face, Congress gave them "the right to request counsel" and courts "the discretionary authority to appoint counsel." *Hilliard v. Volcker*, 659 F.2d 1125, 1129 (D.C. Cir. 1981). The "provision for attorney appointment was not included simply as an afterthought" in Title VII. *Poindexter*, 737 F.2d. at 1183. And the same is true for Title VIII. Courts have therefore refrained from applying the IFP statute's requirements to Title VII

appointment-of-counsel requests. This Court should not permit its filing fee and indigence requirements to be imported into Title VIII.

This is particularly so because neither Title VII nor Title VIII's appointment-of-counsel provision "require[s] that the plaintiff be a pauper." *Poindexter*, 737 F.2d at 1182 n.18. Thus, the proper inquiry into a plaintiff's financial limitations under Title VII's approach—and Title VIII's by extension—is "less stringent than that required for the" IFP statute. *Castner v. Colo. Springs Cablevision*, 979 F.2d 1417, 1422 (10th Cir. 1992) (citing *Gonzalez*, 907 F.2d at 580; *Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982)). Holding FHA plaintiffs to the IFP statute's appointment-of-counsel standard is not only inconsistent with the FHA but also unfairly faults FHA plaintiffs for failing to meet IFP requirements even after paying the filing fee.

### B. The Chens Were Entitled to Appointment of Counsel.

In the absence of a standard for appointment of counsel under the FHA, courts typically turn to the appointment-of-counsel standards from Title VII or the IFP statute. *See e.g.*, *Samuel v. Del. Cnty. Hous. Auth.*, No. 23-3272, 2024 WL 4003088, at *2 (3d Cir. 2024) (suggesting that courts apply circuit-specific appointment-of-counsel tests from both the

IFP statute and Title VII to FHA cases). These tests consider similar factors. When appointing counsel under Title VII, courts consider: "(1) the plaintiff's financial ability to retain an attorney; (2) the plaintiff's efforts to retain counsel; and (3) the merits of the case." *Scott v. Health Net Fed. Servs., LLC*, 463 F. App'x 206, 209 (4th Cir. 2012); *see also Gonzalez,* 907 F.2d at 580; *Castner*, 979 F.2d at 1420–22. Courts also consider the plaintiff's ability to represent themselves. *See Hunter v. Dep't of Air Force Agency*, 846 F.2d 1314, 1317 (11th Cir. 1988) (citations omitted). For appointing counsel under the IFP statute, courts employ a discretionary "exceptional circumstances" test that turns on the complexity of the case and whether the plaintiff has colorable claims but lacks the capacity to present them. *See, e.g.*, *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir. 1978).

The Chens satisfy these factors, warranting counsel under either Title VII's or the IFP statute's approach. The Chens could not litigate their non-frivolous claims on their own because of their limited English skills and the complexity of their case. They also could not afford or

otherwise obtain counsel. All of this favors the appointment of counsel, and the magistrate judge abused his discretion by holding otherwise.

#### 1. The Chens Cannot Litigate this Case on Their Own.

The Chens are "not fluent in English." JA129. They relied completely on translation services to litigate their case. JA124, 126. Counsel is critical for plaintiffs who do not speak English. *Gil v. Reed*, 381 F.3d 649, 657–58 (7th Cir. 2004). Many courts have recognized that a plaintiff's inability to read or write effectively in English favors the appointment of counsel. *See, e.g.*, *Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993) (instructing courts to consider a plaintiff's ability to understand English when assessing appointment-of-counsel motions); *Luna v. Int'l Ass'n of Machinists & Aerospace Workers Loc. No. 36*, 614 F.2d 529, 531 (5th Cir. 1980) (holding that a district court abused its discretion by refusing to appoint counsel for a Title VII plaintiff with a "limited ability to speak English"). This Court should do the same.

The Chens' "limited ability to speak English" rendered them "ill-suited for managing a pro se suit." *Luna*, 614 F.2d at 531. They were "barely able to read and write" in English, which should have entitled

them to counsel. *Whisenant*, 739 F.2d at 162. The magistrate judge's unexplained conclusion that the Chens could "prosecute their case" failed to consider their language barriers. JA211. He should have "displayed more sensitivity and flexibility" towards the Chens' limited English abilities. *Luna*, 614 F.2d at 531. The Chens clearly had difficulty navigating the litigation process alone. For example, their initial service of the complaint was not proper. JA113. They then filed several motions that were not necessary or appropriate for the stage of litigation they were in. *E.g.*, Motion to Sanction Defendants, JA159, 161, 183; Motion to Enter Discovery, JA186; Motion to Expedite Litigation, JA200. They also struggled to keep up with the flurry of litigation in state court. JA125–126.

The Chens' claims were also too complex to litigate without counsel. FHA claims are often complicated, involving multiple, often overlapping, legal theories (disparate-treatment, disparate-impact, and retaliation), unsettled pleading requirements, and mastery of a burden-shifting framework. *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 421, 424 (4th Cir. 2018). Because blatant discrimination is rare, it can be difficult to establish the intent needed to overcome a motion to

dismiss in an FHA case. *See Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991); Lisa T. Alexander, *Evicted: The Socio-Legal Case for the Right to Housing*, 126 Yale L.J. 431, 433 (2017). Retaliation claims are similarly difficult to prove because plaintiffs must establish that defendants were "aware" of plaintiffs' "protected activity," often by relying on the temporal proximity of their protected conduct and defendants' retaliatory action. *Hall v. Greystar Mgmt. Servs. L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) (citing *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003)). The dismissal of the Chens' case is a prime example of how impossible it is for non-native English speakers to prove complex FHA claims without counsel.

Had the Chens' case continued, it also would have required complicated discovery, depositions, and perhaps a trial that the Chens would have been completely unprepared to handle. *See James v. Eli*, 889 F.3d 320, 327–28 (7th Cir. 2018) (noting that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation"). Counsel could "significantly diminish[] [any] pretrial difficulties by helping" the Chens "identify, locate, and prepare witnesses before trial, and avoid common deposition pitfalls." *Pruitt v. Mote*, 503

F.3d 647, 660 (7th Cir. 2007); *see also Whisenant*, 739 F.2d at 163 (explaining that complex discovery and evidence procedures favor appointing counsel). The Chens' familial status claim, for instance, would likely necessitate depositions from staff who visited Apartment 1819 before Defendants abruptly cancelled the apartment transfer. And their race-based claims would require depositions from other tenants. Defendants might also depose the Chens, and defending a deposition pro se is onerous, *Pruitt*, 503 F.3d at 660, especially for non-English speakers. The Chens may also have needed expert testimony to, for example, calculate actual damages under the FHA, 42 U.S.C. § 3613(c)(1)—a task that counsel would be much better suited for than the Chens, *see Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997).

The law is "a profession of words," and the Chens "face steep obstacles in attempting to navigate" litigation. Andrew Truong, *Linguistic Legal Deserts: Addressing Language Access in the United States Legal System for Limited English Proficient Asian Americans and Pacific Islanders*, 102 Boston U. L. Rev. 1441, 1443 (2022). The need for counsel was particularly compelling in this case because unlike in many Title VII cases, there was no executive agency record created before the

Chens' dispute reached federal court. *See Poindexter*, 737 F.2d at 1187–88 (explaining that, in Title VII litigation, the EEOC has typically already made determinations and created a record). The long-lasting and personal stakes of this litigation, compounded by the Chens' language barriers and complex claims, necessitated counsel.

### 2. The Chens' Claims are Colorable.

Title VII's appointed-counsel standard would require only that the Chens' "underlying claim[s] ha[ve] some merit." *Bradshaw v. Zoological Soc'y*, 662 F.2d 1301, 1308 (9th Cir. 1981). The IFP's appointment-of-counsel provision similarly requires that the Chens present colorable claims. *Whisenant*, 739 F.2d at 163. The Chens met both standards: they "ha[d] some chance of prevailing" on their FHA claims, which were neither "patently frivolous," *Poindexter*, 737 F.2d at 1187–88, nor "lack[ing] an arguable basis either in law or in fact," *Neitzke*, 490 U.S. at 325.

The Chens' amended complaint contained non-frivolous allegations that Defendants committed FHA violations. *See Poindexter*, 737 F.2d at 1187. Of note, the standard for appointed counsel is lower than that required under Federal Rule of Civil Procedure 12(b)(6). *Compare*

*Twombly*, 550 U.S. at 570 (holding that Rule 12(b)(6) requires a claim to be "plausible on its face."), *with Poindexter*, 737 F.2d at 1187 (holding that claims must have "some chance of prevailing" for appointment of counsel). The Chens exceeded this standard because their claims were plausible under Rule 12(b)(6). They adequately alleged a non-frivolous familial status discrimination claim that the magistrate judge never acknowledged. *See supra* Part I.A. That alone means that the magistrate judge abused his discretion when he held that the Chens' "lack[ed] a colorable claim." JA211. The Chens also adequately alleged non-frivolous racial discrimination claims that the magistrate judge dismissed. *See supra* Part I.B.

Even if the claims were not sufficiently alleged, the Chens had "some chance of prevailing" both on these claims as well as their claims that Defendants unlawfully retaliated against them. *See supra* Parts I, II. The Chens were entitled to an attorney to help them amend their complaint to more fully state these claims. *Poindexter*, 737 F.2d at 1187 ("[A]ppointment of counsel "should not be refused for want of a meritorious claim.").

### 3. The Chens Were Unable to Obtain or Afford an Attorney.

The Chens' inability to "bear the significant attorney's fees," JA132–133, also warranted appointment of counsel. Inability to afford an attorney favors the appointment of counsel under both the IFP and Title VII statute's appointment-of-counsel standards, although Title VII requires a "less stringent" showing than the IFP statute. *Castner*, 979 F.2d at 1422 (citing *Gonzalez*, 907 F.2d at 580; *Ivey*, 673 F.2d at 269); 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). The Chens do not have to "be destitute" to have counsel appointed. *Id.* at 1421. Rather, they need to demonstrate that they could not have paid for counsel and still afforded daily expenses. *Poindexter*, 737 F.2d at 1186. They satisfied this requirement. JA132–133.

Title VII's appointment-of-counsel test also considers whether one can successfully obtain a lawyer alone, which the Chens could not do. *See Caston v. Sears, Roebuck & Co.*, 556 F.2d 1305, 1309 (5th Cir. 1977) (litigants need not "exhaust the legal directory before a court could appoint" counsel). The Chens' inability to obtain a lawyer overlapped with their inability to afford a lawyer; they struggled to obtain a lawyer

because they struggled to pay. *See Bradshaw*, 662 F.2d at 1319 (explaining that private attorneys decline to represent plaintiffs "upon financial terms that [they are] unable to meet."). The Chens' "lack of skill at obtaining" a permanent, hired attorney weighs in favor of appointing counsel. *Jenkins*, 721 F.2d at 880. Because the Chens do not speak English and are unfamiliar with American law, they were in no position to locate and evaluate potential counsel.

The Chens could not litigate their case alone because of their limited language skills and complex claims. And they could neither obtain nor afford an attorney. These roadblocks warranted counsel under the appointment-of-counsel provisions of either Title VII or the IFP statute, as applied to the FHA. The magistrate judge abused his discretion in denying counsel, and this Court should reverse and remand with instructions to appoint counsel for the Chens.

## CONCLUSION

This Court should hold that the magistrate judge erred in concluding that the Chens' amended complaint did not state plausible FHA claims, and reverse and remand for further proceedings including discovery. In the alternative, even if this Court concludes that dismissal of all claims was appropriate, it should reverse the magistrate judge's dismissal with prejudice. Finally, the magistrate judge abused his discretion in denying counsel, and the order denying appointment and dismissing the case should be reversed and remanded with instructions to appoint counsel for the Chens.

Respectfully Submitted,

*/s/Erica Hashimoto*
Erica Hashimoto
*Director*

Max Alderman
*Supervising Attorney*

Ryan Menter
Chloe Miracle-Rutledge
*Student Counsel*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
eh502@georgetown.edu

Counsel for Plaintiffs-Appellants

Dated: January 30, 2026

## STATEMENT REGARDING ORAL ARGUMENT

The Chens respectfully request oral argument pursuant to Fed. R. App. P. 34(a) and Fourth Circuit Local Rule 34(a). This case presents an important question of first impression. This Court has not addressed the appropriate test to apply to requests for appointment of counsel brought under 42 U.S.C. § 3613(b) of Title VIII of the Civil Rights Act of 1968, otherwise known as the "Fair Housing Act." The answer to this question will have significant implications for Bing and Jie Chen and other similarly situated persons. Oral argument will assist the Court in answering this question.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,235 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

Respectfully Submitted,

*<u>/s/ Max Alderman</u>*
Max Alderman
*Supervising Attorney*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
mea72@georgetown.edu

Counsel for Plaintiffs-Appellants

Dated: January 30, 2026

## CERTIFICATE OF SERVICE

I, Max Alderman, certify that on January 30, 2026, I electronically filed the foregoing Opening Brief of Plaintiffs-Appellants via this Court's CM/ECF system, which will send notice of such filing to counsel of record in the above-captioned case.


*/s/ Max Alderman*
Max Alderman
*Supervising Attorney*

Georgetown University Law Center
Appellate Litigation Program
111 F Street NW, Suite 306
Washington, D.C. 20001
(202) 662-9555
mea72@georgetown.edu

Counsel for Plaintiffs-Appellants