NO. 24-1643

# United States Court of Appeals

*for the*

# Fourth Circuit

BING CHEN; JIE CHEN,

*Plaintiff-Appellants,*

– v. –

COMMODORE MANAGEMENT COMPANY, INC.;
WOODMONT PARK, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT GREENBELT IN CASE NO. 8:23-cv-01838-TJS
TIMOTHY J. SULLIVAN, U.S. MAGISTRATE JUDGE

## BRIEF FOR DEFENDANTS-APPELLEES

DARRAGH L. INMAN
BACON THORNTON & PALMER, LLP
6411 Ivy Lane, Suite 500
Greenbelt, Maryland 20770
(301) 345-7001

*Attorneys for Defendants-Appellees*

COUNSEL PRESS (800) 4-APPEAL • (390927)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in prose cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1643 Caption: Bing Chen et al. v. Commodore Management Company, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Commodore Management Company, Inc.

(name of party/amicus)

who is Appellees, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? **NO.**

2. Does party/amicus have any parent corporations? **NO.**

3. If yes, identify all parent corporations, including all generations of parent corporations: **N/A.**

4. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? **No.**
   If yes, identify all such owners:

5. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? **NO.**
   If yes, identify entity and nature of interest: **N/A.**

6. Is party a trade association? (amici curiae do not complete this question) **NO.**

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member: **NA**

7. Does this case arise out of a bankruptcy proceeding? **NO.**

   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (l) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor. **NO.**

8. Is this a criminal case in which there was an organizational victim? **NO**

   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

**Signature:** *Darragh L. Inman (27163)* Date: 3/2/26
Counsel for Commodore Property Management, Inc.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1643 Caption: Bing Chen et al. v. Commodore Management Company, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Woodmont Park, Inc.

(name of party/amicus)

who is Appellees - , makes the following disclosure:

1. Is party/amicus a publicly held corporation or other publicly held entity? **No.**

2. Does party/amicus have any parent corporations? **No.**
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation other publicly held entity? **No.**
   If yes, identify all such owners: **N/A**

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? **No.**

   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) **No.**

   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member. **N/A.**

6. Does this case arise out of a bankruptcy proceeding? **No.**

   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? **No.**

   If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

**Signature:** *Darragh L. Inman* (27163)

Date: 2/2/26

Counsel for: Woodmont Park, Inc.

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... vii

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF ISSUES .......... 1

STATEMENT OF CASE .......... 3

SUMMARY OF ARGUMENT .......... 12

1. Disparate-Treatment Theory .......... 12
2. Disparate-Impact Theory .......... 12
3. Retaliation .......... 13
4. Appointment of Counsel .......... 14
5. Dismissal with Prejudice was Proper Because Amendment of the Complaint would Be Futile and a Federal Court Did Not Have Jurisdiction to Hear State Law Claims .......... 14

ARGUMENT .......... 16

1. Standard of Review .......... 16
   a. Discrimination Claims .......... 16
   b. Request for Counsel and Dismissal with Prejudice .......... 16
2. Appointment of Counsel is Inappropriate Under Either Standard Advanced by the Chens because the Chens Failed to State a Colorable Claim of Discrimination .......... 16
3. The Chens Failed to Plausibly Plead Discrimination Under a Disparate-Treatment Theory .......... 18
4. The Chens Failed to Plausibly Plead Discrimination Under a Disparate-Impact Theory .......... 21
5. The Chens Failed to Plausibly Plead Retaliation .......... 22
6. Dismissal with Prejudice was Proper Because Amendment of the Complaint would Be Futile and a Federal Court Did Not Have Jurisdiction to Hear State Law Claims .......... 24

CONCLUSION ........................................................................................................ 26
STATEMENT REGARDING ORAL ARGUMENT ............................................ 26
CERTIFICATE OF COMPLIANCE ........................................................................ 27
CERTIFICATE OF SERVICE ............................................................................ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**


*Altevogt v. Kirwan*,
No. WDQ-11-1061, 2012 WL 135283 (D. Md. Jan. 13, 2012) ........................... 4

*Aschcroft v. Iqbal,*
556 U.S. 662 (2009) ........................... 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................... 9, 10, 19, 25

*Berry v. Gutierrez*,
587 F. Supp. 2d 717 (E.D. Va. 2008) ........................... 4

*Castner v. Colorado Springs Cablevision,*
979 F.2d 1417 (10th Cir. 1992) ........................... 6

*Causey v. Balog,*
162 F.3d 795 (4th Cir. 1998) ........................... 22-23

*Chen v. Commodore Management Company, Inc.,*
Case No. TJS-23-1838 (D.Md. 2024), 2024 WL 2922777 ........................... 4, 5, 17

*Conrad v. CSX Transportation, Inc.,*
824 F.3d 103 (4th Cir. 2016) ........................... 22

*Cook v. Bounds*,
518 F.2d 779 (4th Cir. 1975) ........................... 4

*Dowe v. Total Action Against Poverty,*
145 F.3d 653 (4th Cir. 1998) ........................... 23

*Gaines v Baltimore Police Department,*
657 F.Supp.3d 708 (D.Md. 2023) ........................... *passim*

*Harden v. Budget Rent A Car System, Inc.,*
726 F.Supp.3d 415 (D.Md. 2024) ........................... 15, 16, 25

*Israelitt v. Enterprise Services LLC,*
78 F.4th 647 (4 th Cir. 2023) ........................... 23, 24

*Jenkins v. Woodard,*
109 F.4th 242 (4th Cir. 2024) ........................... *passim*

*Jennings v. Frostburg State University*,
679 F.Supp.3d 240 (D.Md. 2023) .......... 23

*Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*,
490 U.S. 296 (1989) .......... 4

*Mercer v. PHH Corporation*,
64 F.Supp.3d 727 (D.Md. 2014) .......... 22, 23

*Pettiford v. Next Generation Trust Service*,
467 Md. 624 (2020) .......... 6, 7, 8

*Reyes v. Waples Mobile Home Park Ltd. P'Ship*,
903 F.3d 415 (4th Cir. 2018) .......... 21

*Rollakanti v. Holy Cross Hospital*,
Civ. Action No. PX 16-2914 (D.Md. February 6, 2017),
2017 WL 4457771 .......... *passim*

*Scott v. Health Net Fed. Servs., LLC*,
463 Fed.Appx. 206 (4th Cir. 2012) .......... 5, 6, 17

*Whisenant v. Yuam*,
739 F.2d 160 (4th Cir. 1984) .......... 4

**Statutes and Other Authorities:**

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1915 .......... 4

28 U.S.C. § 1915(e) .......... 4, 17

42 U.S.C. § 3601 .......... 1

Fed. R. Civ. P. 12(b)(6) .......... *passim*

Md. Code Ann., Criminal Law, §6-301(a) .......... 24

Md. Code Ann., Criminal Law, §6-301(d) .......... 24

## JURISDICTIONAL STATEMENT

This is an appeal from a June 10, 2024 final judgment of the United States District Court for the District of Maryland dismissing a Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq. case filed by then *pro se* litigants Bing Chen and Jie Chen. The United States District Court for the District of Maryland had jurisdiction over the case under Title 28 U.S.C. §1331. The United States Court of Appeals for the Fourth Circuit has jurisdiction over this appeal pursuant to Title 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1. Did the United States District Court for the District of Maryland properly hold that the Chens did not plausibly allege that they were treated differently than other tenants because of their race or national origin?
2. Did the United States District Court for the District of Maryland properly hold that the Chens failed to plausibly allege any facts that indicated that they were discriminated against under a disparate impact theory?
3. Did the United States District Court for the District of Maryland properly hold that the Chens did not plausibly alleged retaliation for an action protected under the Fair Housing Act?
4. Does the Failure of the Chens to Plausibly Allege Discrimination Justify the United States District Court for the District of Maryland's Discretionary Decision to Refrain from Appointing Counsel under the Fair Housing Act?

5. Did the United States District Court for the District of Maryland Abuse its Discretion in Failing to Appoint Counsel for the Chens?
6. Did the United States District Court for the District of Maryland Properly Dismiss the Chens' Complaint with Prejudice, Given that Amendment would be Futile.

## STATEMENT OF CASE

This is the second round of appellate briefing in this case. The United States Court of Appeals for the Fourth Circuit appointed legal counsel to represent the Chens with respect to their request for Court appointed counsel, and any other meritorious argument that may exist. After 50 pages of new briefing, the dispositive issue is still that the Chens failure to plausibly plead discrimination.

The Chens view this briefing as an opportunity to define the proper standard for use in deciding whether or not to appoint counsel for housing discrimination claims. The problem is that under either standard, the Chens must demonstrate a plausibly claim of discrimination before they would be entitled to counsel. Because they have not pled a plausibly claim of discrimination, they are not entitled to appointed counsel under either the *in forma pauperis* test or the Title VII test. Any holding beyond this would be *obiter dicta*.

Taking each possible standard in turn, the *in forma pauperis*, or IFP approach, requires the party seeking the appointment of counsel to demonstrate that "exceptional circumstances" exist. *Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024). The IFP test for exceptional circumstances requires the Court to consider two factors: "(1) whether the plaintiff **has a colorable claim *<u>and</u>*** (2) considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff "lacks the capacity to present it." *Jenkins,* 109 F.4th at 247 (emphasis

added). Because the IFP standard requires a plausible claim of discrimination, the Chens cannot obtain free counsel under the IFP statute because they cannot plausibly allege discrimination on this record.[1]

The United States District Court for the District of Maryland held that the IFP provision of 28 U.S.C. §1915 (e) applied to the Chens' request for counsel and that "[e]ven if Plaintiffs had not paid the filing fee, the appointment of counsel would

---

[1] The United Stated District Court for the District of Maryland denied the Chens' request for counsel because they did not have a colorable discrimination claim. The Court reasoned in footnote 2 of its memorandum opinion:

> The mechanism for the appointment of counsel in civil cases is the *in forma pauperis* provision of 28 U.S.C. § 1915(e). Plaintiffs filed their complaint on July 7, 2023, and paid the full filing fee. ECF No. 1. Thus, the appointment of counsel is not available pursuant to 28 U.S.C. § 1915. Even if Plaintiffs had not paid the filing fee, the appointment of counsel would still not be warranted. In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). As explained below, Plaintiffs lack a colorable claim. Even so, this is not a complex case and Plaintiffs clearly have the capacity to prosecute their case. This is not an exceptional case warranting the appointment of counsel. For these reasons, Plaintiffs' request for the appointment of counsel is denied.

*Chen v. Commodore Management Company, Inc.,* Case No. TJS-23-1838 (D.Md. 2024) *available at 2024 WL 2922777* at fn. 2.

still not be warranted …[because] *Plaintiffs lack a colorable claim*." *Chen v. Commodore Management Company, Inc.,* Case No. TJS-23-1838 (D.Md. 2024) *available at 2024 WL 2922777* at fn. 2; *see also Jenkins,* 109 F.4th at 247. The Court also noted that the Chens had paid their filing fee and that they "clearly have the capacity to prosecute their case." *Id.* The Court did properly consider the IFP factors for appointing counsel, and its decision to deny that request is justified on the lack of a colorable claim alone. The Court did not err in applying the IFP analysis to the Chens' request for free counsel.

Alternatively, if the Title VII approach is adopted as the test for appointment of counsel in Fair Housing Act cases, as urged by the Chens, the result is the same because that analysis also requires that the Chens demonstrate that they have a **colorable claim of discrimination.** *Rollakanti v. Holy Cross Hospital,* Civ Action No. PX 16-2914 (D.Md. February 6, 2017), *available at 2017 WL 4457771 at * 1 citing Scott v. Health Net Fed. Servs., LLC,* 463 Fed.Appx. 206, 209 (4th Cir. 2012)(emphasis added). The Title VII test requires the Plaintiff to prove that: 1) Plaintiff lacks the financial ability to retain counsel; 2) Plaintiff has made efforts to retain counsel; and, most importantly, 3) **"the merits of the case."** *Id.* (emphasis added).

With respect to the first factor, "the Plaintiff need not be indigent, a pauper, or entirely destitute in order for the court to appoint counsel" under Title VII.

*Rollakanti v. Holy Cross Hospital,* Civ Action No. PX 16-2914 (D.Md. February 6, 2017), *available at 2017 WL 4457771 at * 1 citing Castner v. Colorado Springs Cablevision,* 979 F.2d 1417, 1421 (10th Cir. 1992). To the extent that the Title VII approach is more relaxed than the IFP approach with respect to indigency, the difference is immaterial in this case because the Chens' claims lack merit and are not colorable claims of discrimination. Under either the Title VII test of the IFP test, the Chens' request for appointment of counsel fails because they have not pled a colorable federal claim. The Court does not need to decide whether the IFP or Title VII standard applies, because *both standards* require a colorable claim. *Jenkins,* 109 F.4th at 247 (IFP test requires the Plaintiff to demonstrate a colorable discrimination claim); *Rollakanti*, 2017 WL 4457771 at * 1 *citing Scott,* 463 Fed.Appx. at 209 (Title VII test for appointment of counsel requires proof of a colorable claim)*; see also* Appellants Second Brief at 37, *citing Scott v Health Net Servs, LLC,* 463 F.App'x 206, 209 (4th Cir. 2012) (noting Title VII test requires Plaintiff to demonstrate a colorable claim).

The Chens did not plead a discrimination claim. The Chens pled something close to a rent escrow action, omitting allegations that the alleged problems with the property were "serious and dangerous". *See Pettiford v. Next Generation Trust Service,* 467 Md. 624, 658 (2020)(explaining process through which a tenant can plead a rent escrow action, seeking to avoid rental payments based on "serious and

dangerous" defects in rented property). The defects that the Chens plead in their Complaint, such as cracked vanity mirror or a door that does not completely close, are generally not serious enough to justify rent escrow. "There is a rebuttable presumption that [certain] conditions, when they do not present a serious and substantial threat to the life, health, and safety of the occupants, are not covered by the [rent escrow statute], such as small cracks in the walls, floors, or ceilings" or even "the absence of air conditioning." *Pettiford,* 467 Md. at 657. The defects pled by the Chens are minor, and did not approach the level that would begin to implicate the breach of the implied warranty of habitability.[2]

The Chens asserted that they intentionally refused to pay rent for five entire months, between March and July 2022, "in protest" of the above conditions.

---

[2] The defects pled by the Chens were: 1. The landlord did not provide them a landlord-tenant handbook (JA004 and JA214); 2. In 2016, "the vanity in the bathroom of the 1819 room was rusted and leaked water" (JA004-JA005 and JA214); 3. The landlord charged the Chens $225 to replace the vanity mirror (JA005 and JA214; 4. In 2017 the Chens paid the wrong rental amount and in response the landlord required the Chens to correct that error with a money order, which the Chens refused to do (JA005 and JA214); 5. "other natural damages in the room were reported" to the landlord but not repaired (JA005); 6. the bathroom door was broken (JA005-006); 7. the door to the a bedroom did not fully close (JA 006); 8. "the shutters of three windows [were] broken" (JA006); 9. "the closet cabinet could not be closed" (JA006); 10. "the kitchen wall [was] cracked" (JA006); 11. "the bathroom floor [was] cracked" (JA 006); 12. "uniform and routine" pest extermination efforts did not completely eradicate the presence of cockroaches or mice (JA006); 13. the Chens' apartment featured pictures that were "drawn on the wall[s] by my children", which the Chens believed lead to a refusal to allow them to transfer apartments (JAS 007).

(JA007). The types of allegations that the Chens made regarding the condition of the apartment were likely not severe enough to satisfy the "serious and dangerous" standard, which would allow a Maryland court to impose a rent escrow until conditions were remedied. *See Pettiford,* 467 Md. 657-658. The most serious defects alleged by the Chens were the pest allegations. Even with respect to those allegations, the Chens admitted that the landlord routinely performed exterminations. (JA006). The Chens also plead that they refused to permit the landlord to perform pest control services in their apartment on April 18, 2023. (JA011). The Chens' complaints about the condition of their apartment are of the kind that are rebuttably presumed to not present a serious and substantial threat to the life, health, and safety of the occupants", making rent escrow inappropriate. *Pettiford,* 467 Md. at 657. The Chens concede that the landlord "repaired the main problems in the room, including the replacement of two doors" by July 2022. JA007

In their federal lawsuit, the Chens attempted to convert their landlord-tenant dispute into a housing discrimination lawsuit by adding conclusory statements at the end of their rent escrow allegations that the landlord's property management practices were "obviously intentional and illegal" and tantamount to "racial discrimination" and "illegal acts under Contempt of Court…." (JA16).

If every landlord tenant dispute can be converted to a discrimination case by simply adding "because of my protected class" to the end of each allegation, the risk

of operating an apartment building becomes exponentially greater and more expensive to insure. The protection against such pleading tactics come from a straightforward application of the plausibility requirement of *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). *See Gaines v Baltimore Police Department,* 657 F.Supp.3d 708, 730 (D.Md. 2023)(holding that *Twombly* applied to discrimination cases and requires plausibly claims, as distinguished from "labels and conclusions" or "formulaic recitation of the elements of a cause of action"). "An unadorned, the-defendant-unlawfully-harmed-me accusation does not state a plausible claim of relief." *Gaines,* 657 F.Supp.3d at 730.

The Chens have pled nothing more than "the-defendant-unlawfully-harmed-me" in this case. Examples include:

1. "A case concerning a dispute over five months rent of about $8,250…[shows that] [t]he defendants [were] playing and harassing us with false lawsuits. **This is very serious discrimination**. (JA127)(emphasis added);

2. The illegal behavior of the defendants in paragraphs 5-24 is complete racial discrimination (JA129);

3. "The defendants did not provide the landlord-tenant handbook, it is racial discrimination" (JA129);

4. "They illegally asked us to pay Vanity Replacement $225, [i]t is racial discrimination (JA129);

5. “Requiring a Money Order to pay the rent is racial discrimination” (JA129);

6. “Retaliating against us because we have filed a fair housing complaint is discrimination (JA130);

7. “Failure to maintain or repair is racial discrimination” (JA130);

8. “Not in time to eradicate cockroaches, harming our health, and racial discrimination (JA130);

9. “Because we have two children in our family, defendants cancelling your transfer application is discrimination for familial status (children) (JA130);

10. Deliberately failing to serve the court notice of the Eviction Order hearing, and using false information to deceive the court about the order is racial discrimination.” (JA130);

11. “False lawsuits are racist” (JA130);

12. “Dismissal of case without notice, [l]et us go for nothing, it is racial discrimination.” (JA130);

13. “Illegally threatening us with eviction is racial discrimination” (JA130);

14. “Wasn’t prepared for pest clean-out fine of $50 is racial discrimination (JA131).

These allegations are “unadorned, the-defendant-unlawfully-harmed-me accusation[s]” that “do[] not state a plausible claim of relief.” *Gaines,* 657

F.Supp.3d at 730. The United States District Court for the District of Maryland correctly applied *Twombly* to the conclusory allegations of the Chens, finding that they had not plausibly pled discrimination. JA218. The Court also correctly held that the Chens had not plausibly alleged retaliation in their pleadings.

## SUMMARY OF ARGUMENT

The Chens discrimination claims were limited to conclusory assertions that race-neutral activities were discriminatory. The Chens never plausibly alleged that there was any connection between any allegedly adverse action and their race or nationality. The Chens also failed to plausibly alleged retaliation.

### 1. Disparate-Treatment Theory

The United States District Court for the District of Maryland properly held that the Chens did not plausibly allege that they were treated differently than other tenants because of their race or national origin. In analyzing the Chens pleadings under a disparate impact theory, the Court correctly held that "Plaintiffs have not plausibly alleged that Defendants treated them differently than other tenants because of their race or national origin." (JA218). The Court correctly found that "[t]he Amended Complaint has no facts suggesting a nexus between Defendants' conduct and Plaintiff's protected status." (JA218). The Court also correctly held that the Chens' allegations merely "conclude – without any factual support – that the only explanation for Defendants' actions is racial discrimination." (JA218).

### 2. Disparate-Impact Theory

The United States District Court for the District of Maryland correctly held that the Chens failed to allege "facts that wud support [a disparate-impact] theory [as]…they have not alleged the existence of statistical evidence (or even anecdotal

evidence) that might show discrimination by disparate impact." (JA219). The Court correctly held that the "Amended Complaint is devoid "of plausible allegations that Defendants' actions or policies had a disproportionately adverse effect on minorities, that they are unjustified by a legitimate rationale, and that there is a causal connection (let alone a robust one) between Defendants' actions and the effect of the actions on Plaintiffs' class." (JA219-220).

### 3. Retaliation

The United States District Court for the District of Maryland correctly held that the Chens failed to plead a plausible claim of retaliation. (JA220). The Court correctly found that the two allegations that appeared to be aimed at establishing retaliation were "threadbare and speculative". (JA220-221). The Court correctly explained that the Chens asserted that they complained to "Housing and Community Affairs" in 2016 about being charged $225 by the Defendants for the repair of a broken vanity mirror and "were advised to prosecuted the defendant." (JA221). The Court correctly noted that even if it assumed that a complaint to "Housing and Community Affairs" was protected activity, there was no plausible allegation that Defendants "knew of that activity or that there was a causal connection between the activity and Defendants' actions." (JA221).

### 4. Appointment of Counsel

The United States District Court for the District of Maryland properly exercised its discretion in refusing to appoint counsel for the Chens. The Court ruled on this request numerous times. The Court's October 27, 2023 memorandum opinion and order denied the Chens request for counsel, explaining that the Chens did not present colorable claims of discrimination, presented no evidence that they attempted to obtain counsel on their own, had paid filings fees, and did not press claims that were complex in nature. (JA118).

The Court addressed the Chens' request for counsel again in its June 10, 2024 memorandum opinion and order, correctly concluding that the Chens had still failed to show that they were entitled to Court appointed counsel. (JA211). In that opinion, the Court expressly stated that even if the Chens had not paid the filing fees, appointment of counsel was not appropriate for several reasons, including the fact that "**Plaintiffs lack a colorable claim**." (JA211). The Court correctly held that this was not an "exceptional case warranting the appointment of counsel" and properly exercised its discretion in refusing to appoint counsel for the Chens. (JA211).

### 5. Dismissal with Prejudice was Proper Because Amendment of the Complaint would Be Futile and a Federal Court Did Not Have Jurisdiction to Hear State Law Claims.

The United States District Court for the District of Maryland did not abuse its discretion in dismissing this action with prejudice, because the Chens had already

had the opportunity to amend their complaint and further amendment would have been futile. *Harden v. Budget Rent A Car System, Inc.,* 726 F.Supp.3d 415, 440 (D.Md. 2024). The Chens amended their Complaint once. (JA119). In their opposition to the dispositive 12(b)(6) motion, the Chens doubled down on their argument that they had already adequately pled discrimination in their amended complaint rather than requesting leave to amend the substantive allegations of their discrimination claims. (JA168)(Chens asserting that their allegations satisfy *Twombly* standard); (JA173)(arguing that paragraphs 1-9 of their Amended Complaint state a claim for discrimination). In their opposition to the 12(b)(6) motion the Chens requested two non-pertinent amendments: "1. Request the court to confirm that the defendant's eviction actions are illegal; 2. We claim compensatory and punitive damages increased to $21,68 million." (JA174). Neither of these proposed amendments would change the fact that the Chens failed to plead plausible claims of discrimination.

The with prejudice dismissal was also appropriate because the Chens did not request leave to amend their complaint after the 12(b)(6) motion pointed out the defects in their pleadings. *Harden,* 726 F.Supp.3d 415, 440 (D.Md. 2024)(dismissal with prejudice is appropriate when a plaintiff does not seek leave to amend the pleadings after a 12(b)(6) motion identifies the defects in those pleadings). Accordingly, the Court did not abuse its discretion when it dismissed the Chens' action with prejudice.

## ARGUMENT

### 1. Standard of Review

<u>a. Discrimination Claims.</u>

The granting of a motion to dismiss for failure to state a claim is reviewed *de novo*. *Aschcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion to dismiss a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s] do[] not state a plausible claim of relief." *Gaines,* 657 F.Supp.3d at 730.

<u>b. Request for Counsel and Dismissal with Prejudice.</u>

The United States District Court for the District of Maryland's decision not to appoint counsel for the Chen is reviewed under an abuse of discretion standard. *Jenkins v. Woodard,* 109 F.4th 242, 247 (4th Cir. 2024). Likewise, the Court's judgment regarding whether a dismissal under 12(b)(6) will be with, or without, prejudice is reviewed under an abuse of discretion standard. *Harden,* 726 F.Supp.3d at 440.

### 2. Appointment of Counsel is Inappropriate Under Either Standard Advanced by the Chens because the Chens Failed to State a Colorable Claim of Discrimination.

In this case, appointment of counsel under either IFP standard or the Title VII appointment of counsel standard was inappropriate because both standards require a colorable claim. *Jenkins,* 109 F.4th at 247 (IFP test requires the Plaintiff to demonstrate a colorable discrimination claim); *Rollakanti*, 2017 WL 4457771 at * 1

*citing Scott,* 463 Fed.Appx. at 209 (Title VII test for appointment of counsel requires proof of a colorable claim)*; see also* Appellants Second Brief at 37, *citing Scott,* 463 F.App'x at 209 (noting Title VII test requires Plaintiff to demonstrate a colorable claim). The Chens are not entitled to have counsel appointed because they have not alleged a colorable claim of housing discrimination. *See id.*

The United States District Court for the District of Maryland held that the IFP provision of 28 U.S.C. §1915 (e) applied to the Chens' request for counsel and that "[e]ven if Plaintiffs had not paid the filing fee, the appointment of counsel would still not be warranted …[because] *Plaintiffs lack a colorable claim*." *Chen v. Commodore Management Company, Inc.,* Case No. TJS-23-1838 (D.Md. 2024) *available at 2024 WL 2922777* at fn. 2; *see also Jenkins,* 109 F.4th at 247. The Court also noted that the Chens had paid their filing fee and that they "clearly have the capacity to prosecute their case." *Id.* The Court did properly consider the IFP factors for appointing counsel, and its decision to deny that request is justified on the lack of a colorable claim alone. The Court did not err in applying the IFP analysis to the Chens' request for free counsel.

Even if the Title VII approach is adopted as the test for appointment of counsel in Fair Housing Act cases, as urged by the Chens, the result is the same because that analysis also requires that the Chens demonstrate that they have a colorable claim of discrimination. *Rollakanti*, 2017 WL 4457771 at * 1 *citing Scott,* 463 Fed.Appx. at

209. The Title VII test requires the Plaintiff to prove that: 1) Plaintiff lacks the financial ability to retain counsel; 2) Plaintiff has made efforts to retain counsel; and, most importantly, 3) **"the merits of the case."** *Id.* (emphasis added).

It is unnecessary to decide whether the Title VII test or the IFP test is applicable to requests for the appointment of counsel under the Fair Housing Act, because the absence of a colorable claim of discrimination in this case makes the appointment of counsel inappropriate under either standard.

### 3. The Chens Failed to Plausibly Plead Discrimination Under a Disparate-Treatment Theory.

The United States District Court for the District of Maryland properly held that the Chens did not plausibly allege that they were treated differently than other tenants because of their race or national origin. In analyzing the Chens pleadings under a disparate impact theory, the Court correctly held that "Plaintiffs have not plausibly alleged that Defendants treated them differently than other tenants because of their race or national origin." (JA218). The Court correctly found that "[t]he Amended Complaint has no facts suggesting a nexus between Defendants' conduct and Plaintiff's protected status." (JA218). The Court also correctly held that the Chens' allegations merely "conclude – without any factual support – that the only explanation for Defendants' actions is racial discrimination." (JA218).

"An unadorned, the-defendant-unlawfully-harmed-me accusation does not state a plausible claim of relief." *See Gaines v Baltimore Police Department,* 657

F.Supp.3d 708, 730 (D.Md. 2023). Instead, claims must "consist of more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic v. Twombly,* 550 U.S. 544, 545 (2007). The Chens have pled nothing more than "the-defendant-unlawfully-harmed-me" in this case. Examples include:

1. "A case concerning s dispute over five months rent of about $8,250…[shows that] [t]he defendants [were] playing and harassing us with false lawsuits. **This is very serious discrimination**. (JA127)(emphasis added);

2. The illegal behavior of the defendants in paragraphs 5-24 is complete racial discrimination (JA129);

3. "The defendants did not provide the landlord-tenant handbook, it is racial discrimination" (JA129);

4. "They illegally asked us to pay Vanity Replacement $225, [i]t is racial discrimination (JA129);

5. "Requiring a Money Order to pay the rent is racial discrimination" (JA129);

6. "Retaliating against us because we have filed a fair housing complaint is discrimination (JA130);

7. "Failure to maintain or repair is racial discrimination" (JA130);

8. “Not in time to eradicate cockroaches, harming our health, and racial discrimination (JA130);

9. “Because we have two children in our family, defendants cancelling your transfer application is discrimination for familial status (children) (JA130);

10. Deliberately failing to serve the court notice of the Eviction Order hearing, and using false information to deceive the court about the order is racial discrimination.” (JA130);

11. “False lawsuits are racist” (JA130);

12. “Dismissal of case without notice, [l]et us go for nothing, it is racial discrimination.” (JA130);

13. “Illegally threatening us with eviction is racial discrimination” (JA130);

14. “Wasn’t prepared for pest clean-out fine of $50 is racial discrimination (JA131).

These allegations are “unadorned, the-defendant-unlawfully-harmed-me accusation[s]” that “do[] not state a plausible claim of relief.” *Gaines,* 657 F.Supp.3d at 730. The Court correctly held that the Chens’ “sparse conclusions assigning racial animus to Defendants are insufficient to raise their right to relief above a speculative level”, justifying a 12(b)(6) dismissal.

#### 4. The Chens Failed to Plausibly Plead Discrimination Under a Disparate-Impact Theory.

The United States District Court for the District of Maryland correctly held that the Chens failed to allege "facts that wud support [a disparate-impact] theory [as]…they have not alleged the existence of statistical evidence (or even anecdotal evidence) that might show discrimination by disparate impact." (JA219). The Court correctly held that the "Amended Complaint is devoid "of plausible allegations that Defendants' actions or policies had a disproportionately adverse effect on minorities, that they are unjustified by a legitimate rationale, and that there is a causal connection (let alone a robust one) between Defendants' actions and the effect of the actions on Plaintiffs' class." (JA219-220).

To survive a 12(b)(6) motion, a disparate-impact claim must show a "robust causal connection between the defendant's challenged policy and the disparate impact on a protected class." *Reyes v. Waples Mobile Home Park Ltd. P'Ship,* 903 F.3d 415, 421 (4th Cir. 2018). "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Reyes,* 903 F.3d at 424. The United States District Court for the District of Maryland correctly found that the Chens had not "alleged facts that would support [a disparate-impact] theory, and …had not alleged the existence of statistical evidence (or even anecdotal evidence) that might show discrimination by disparate impact. (JA219).

**5. The Chens Failed to Plausibly Plead Retaliation.**

The United States District Court for the District of Maryland correctly held that the Chens failed to plead a plausible claim of retaliation. (JA220). The Court correctly found that the two allegations that appeared to be aimed at establishing retaliation were "threadbare and speculative". (JA220-221). The Court correctly explained that the Chens asserted that they complained to "Housing and Community Affairs" in 2016 about being charged $225 by the Defendants for the repair of a broken vanity mirror and "were advised to prosecuted the defendant." (JA221). The Court correctly noted that even if it assumed that a complaint to "Housing and Community Affairs" was protected activity, there was no plausible allegation that Defendants "knew of that activity or that there was a causal connection between the activity and Defendants' actions." (JA221).

The Chens pleadings do not explain, or even allege, that anyone employed by the Defendants knew about their alleged protected activity. The plead a viable retaliation claim, the Chens were required to demonstrate not simply that someone employed by the Defendants had knowledge of their alleged protected activity, but rather "that that the decision-makers who subjected [the plaintiff] to the alleged adverse action were aware of the protected activity." *Conrad v. CSX Transportation, Inc.,* 824 F.3d 103, 107-08 (4th Cir. 2016); *Mercer v. PHH Corporation,* 64 F.Supp.3d 727, 737 (D.Md. 2014) *citing Causey v. Balog,* 162 F.3d 795, 803 (4th

Cir. 1998)( "Knowledge of [protected activity] is essential to a retaliation claim."). "If a plaintiff cannot establish that the decision maker had knowledge of the protected activity at the time of the adverse employment action, his retaliation claim must fail." *Mercer,* 64 F.Supp.3d at 737 *citing Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir. 1998); *see also Jennings v. Frostburg State University,* 679 F.Supp.3d 240, 281 (D.Md. 2023). The United States District Court for the District of Maryland correctly held that "a landlord cannot retaliate against a tenant for protected activity about which the landlord has no knowledge." (JA221). The absence of evidence that Defendants knew about the protected activity, alone, is enough to justify the 12(b)(6) dismissal.

The Court also noted that "Plaintiffs' claims that Defendants filed lawsuits against them for nonpayment of rent in 2022 and 2023 because of a complaint that Plaintiff made in 2016 regarding s $225.00 repair bill are implausible." (JA222). A "lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse action…often negates any inference that a causal connection exists between the two." *Jennings,* 679 F.Supp.3d at 282.

The Chens' retaliation claim also fails to plausibly state a claim because the alleged adverse actions were not serious enough to dissuade the Chens from protesting allegedly illegal activity. *See Israelitt v. Enterprise Services LLC,*78 F.4th 647, 656 (4 th Cir. 2023). The Chens were required to plausibly plead an adverse action sufficient

to "dissuade a reasonable [person] from making or supporting a charge" of housing discrimination. *See Israelitt,* 78 F.4th at 656. The landlord tenant actions brought against the Chens do not satisfy this requirement because the Chens admittedly refused to pay five months rent (JA007), which naturally resulted in failure to pay rent actions being filed against them – 6 years after the alleged protected activity. On appeal, the Chens argue that the refusal to allow them to transfer from the apartment they lived in to another apartment was retaliatory, again without any explanation of why this refusal was harmful enough to dissuade them from protesting allegedly discriminatory practices. If the apartment building's owners or managers were indeed discriminating against the Chens, moving to a different apartment in the same building would not cure that alleged discrimination. Moreover, the Chens admit that their children were drawing on the walls of the apartment that they had (JA007), which is vandalism. *See* Md. Code Ann., Criminal Law, §6-301(a) & (d) ("defacing" the real property of another, which includes graffiti, qualified as malicious destruction of property).

The Court properly disposed of the Chens' retaliation claim because it did not plausibly alleged retaliation.

**6. Dismissal with Prejudice was Proper Because Amendment of the Complaint would Be Futile and a Federal Court Did Not Have Jurisdiction to Hear State Law Claims.**

The United States District Court for the District of Maryland did not abuse its discretion in dismissing this action with prejudice, because the Chens had already

had the opportunity to amend their complaint and further amendment would have been futile. *Harden,* 726 F.Supp.3d at 440. The Chens amended their Complaint once. (JA119). In their opposition to the dispositive 12(b)(6) motion, the Chens doubled down on their argument that they had already adequately pled discrimination in their amended complaint rather than requesting leave to amend the substantive allegations of their discrimination claims. (JA168)(Chens asserting that their allegations satisfy *Twombly* standard); (JA173)(arguing that paragraphs 1-9 of their Amended Complaint state a claim for discrimination). In their opposition to the 12(b)(6) motion the Chens requested two non-pertinent amendments: "1. Request the court to confirm that the defendant's eviction actions are illegal; 2. We claim compensatory and punitive damages increased to $21,68 million." (JA174).

Neither of these proposed amendments would change the fact that the Chens failed to plead plausible claims of discrimination. The with prejudice dismissal was therefore also appropriate because the Chens did not request leave to amend their complaint after the 12(b)(6) motion pointed out the defects in their pleadings. *Harden,* 726 F.Supp.3d 415, 440 (D.Md. 2024)(dismissal with prejudice is appropriate when a plaintiff does not seek leave to amend the pleadings after a 12(b)(6) motion identifies the defects in those pleadings). Accordingly, the Court did not abuse its discretion when it dismissed the Chens' action with prejudice.

## CONCLUSION

This action took a landlord-tenant dispute and added conclusory assertions of discrimination that failed to plausibly state a claim. The United States District Court for the District of Maryland properly analyzed the pleadings in this case and properly found that there was no plausible claim of discrimination or retaliation. For that reason, Commodore requests that the decision of the United States District Court for the District of Maryland be AFFIRMED.

Respectfully submitted,

Dated: March 2, 2026

/s/ *Darragh L. Inman*____
Darragh L. Inman (27163)
Bacon, Thornton & Palmer, LLP
6411 Ivy Lane, Suite 500
Greenbelt, Maryland 20770
301-345-7001
dinman@lawbtp.com

## STATEMENT REGARDING ORAL ARGUMENT

The Appellees believe that this case does not require oral argument. Because either test for the appointment of counsel under the Fair Housing Act advanced by Appellants requires a showing of a meritorious claim, this is not the proper case to determine whether or not the IFP test or the Titles VII test applies. The decision of the United States District Court for the District of Maryland should be affirmed without reaching which standard for appointment of counsel applies.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5616 words, excluding the part of the brief exempted by Federal Rule of Appellate Procedure 32 (f).

Respectfully submitted,

Dated: March 2, 2026

/s/ *Darragh L. Inman*____

Darragh L. Inman (27163)
Bacon, Thornton & Palmer, LLP
6411 Ivy Lane, Suite 500
Greenbelt, Maryland 20770
301-345-7001
dinman@lawbtp.com

## CERTIFICATE OF SERVICE

I herby certify that on March 2, 2026 I electronically filed the foregoing Appellees Responsive Brief via the Court's CM/ECF system, which will send notice of such filings to counsel of record in the above-captioned case.

Respectfully submitted,

Dated: March 2, 2026

/s/ *Darragh L. Inman*____

Darragh L. Inman (27163)
Bacon, Thornton & Palmer, LLP
6411 Ivy Lane, Suite 500
Greenbelt, Maryland 20770
301-345-7001
dinman@lawbtp.com